No. 2-23-0416
Order filed January 22, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-2141 |
| ESTEBAN PEREZ, | ) ) | Honorable Julia A. Yetter, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in granting the State's petition to deny defendant pretrial release and ordering him detained.  Affirmed.

¶ 2    In this interlocutory appeal under Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023), defendant, Esteban Perez, appeals from the trial court's order granting the State's petition to deny pretrial release and ordering him detained pursuant to Public Acts 101-562 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1]  See also *Rowe v. Raoul*, 2023 IL

_____

[1]The Act has also been referred to as the Safety, Accountability, Fairness and Equity-Today

129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On October 7, 2023, defendant was arrested and charged with aggravated battery – deadly weapon other than by discharge of a firearm, a class 3 felony (720 ILCS 5/12-3.05(f)(1) (West 2022)), aggravated battery in a public place, a class 3 felony (720 ILCS 5/12-3.05(c) (West 2022)), aggravated assault—deadly weapon or rifle, a class A misdemeanor (720 ILCS 5/12-2(c)(1) (West 2022)), and criminal damage to property not exceeding $500, a class A misdemeanor (720 ILCS 5/21-1(a)(1) (West 2022)).

¶ 5      In a police synopsis, Elgin police officer Jacob Sjodin related that, on October 7, 2023, at about 11:44 a.m. in Carleton Rogers Park (at East Highland Avenue and North Spring Street), defendant (a Chicago resident) approached Enrique Ramirez and twice punched him in the head with a closed fist. Ramirez then got up and grabbed a stick to defend himself. Defendant took a brick from a flower bed in the park and threw it at Ramirez, hitting him in the head. Ramirez swung his stick but missed defendant. Defendant threw five more bricks at Ramirez, before police arrived at the scene. Officer Sjodin further related that the entire incident was captured on a street camera. Ramirez refused medical treatment, and defendant was arrested. Defendant stated that he wanted to kill Ramirez and "Hispanics." Defendant was first transported to Sherman Hospital for a mental health evaluation (for his homicidal statements) and then to the Elgin jail. Sjodin

_____

(SAFE-T) Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public acts.

further related that additional witnesses affirming the incident "are documented in supplemental reports." (No such supplemental reports are contained in the record on appeal.)

¶ 6    On October 8, 2023, the State filed a verified petition to deny defendant pretrial release, alleging that defendant was charged with a detainable offense—aggravated battery with a deadly weapon other than by discharge of a firearm—and that his pretrial release posed a real and present threat to the safety of any person or the community. 725 ILCS 5/110-6.1(a)(6) (West 2022). It further asserted that defendant's criminal history included a conviction for disorderly conduct (case No. 2017-CM-2100), a class A misdemeanor, and robbery and injure child/elderly/disabled with intent of bodily harm (a 2019 Texas felony offense).

¶ 7    At an October 8, 2023, hearing, the trial court found probable cause for defendant's arrest. The court next heard argument on the State's petition. The State noted that the charge of aggravated battery with a deadly weapon was a detainable offense and that it was proceeding under the statute's dangerousness prong (725 ILCS 5/110-6.1(a) (West 2022)). Upon the State's request, the court admitted into evidence the police synopsis. The State argued that the synopsis supported its argument that defendant was a danger to the safety of the community. He threw a brick at the victim, striking his head, and then grabbed additional bricks in an attempt to throw them at the victim. Defendant also made statements, the State noted, that were homicidal, asserting that he wanted to kill the victim and other Hispanic people.

¶ 8    At this point, defendant interrupted the proceedings, disputing the allegations and repeatedly using profanity and a racial slur and interrupting the court. The court admonished him to refrain from interrupting and to be respectful. Defendant then again interrupted, including threatening to slap the prosecutor, and the court again admonished him and noted it was giving him a final warning. The State continued with its argument, asserting that the police report

reflected that defendant was a danger to the public. Defendant again interrupted, using profanity and a racial slur. The court had him removed from the courtroom.

¶ 9 Defense counsel argued that the State's reliance on the synopsis to show that defendant committed the charged act was inadequate, as it was brief and the State did not specify who watched the video recording or what the victim stated. Addressing defendant's outburst, counsel noted that he had been taken for a mental health evaluation after the incident and argued that he had not been violent in the courtroom but was merely disrespectful. Counsel asserted that, if defendant had mental health issues, there are mitigating conditions that could be imposed. Finally, counsel noted that defendant could be involuntarily committed instead of being detained.

¶ 10 The trial court granted the State's petition. It relied on the police synopsis, including that the officer's recitation that the incident was captured on camera (a review of which by the officer provided information concerning the incident), and defendant's homicidal statements directed at the victim. It noted defendant's outburst in court and that he was taken for a mental health evaluation after the incident. The court found defendant highly agitated, unable to contain himself, disrespectful, and that he appeared to be suffering from a mental health issue. The court also determined that defendant's in-court behavior bordered on threatening, which may have been due to this mental health condition, and it further found that defendant posed a threat to the safety of Ramirez and the community.

¶ 11 The court further found that there were no less restrictive conditions it could impose because, it determined, defendant was not receptive to abiding by any conditions. It noted that, at some point in the future, it could revisit the issue if defendant has "made decisions to address what appears to the Court to be his mental health situation, which in the Court's opinion, is causing him to be unpredictable and potentially violent."

¶ 12    In its written order, the court stated that the basis of its finding that defendant committed a detainable offense was the violent offense viewed by the officer in the video of the incident. It noted that its dangerousness finding was based on defendant's agitation and inability to control himself in court, combined with the violent nature of the offense. Finally, the court found that less restrictive conditions would not assure the safety of the community or assure defendant's appearance in court based upon his inability or unwillingness, possibly due to mental health issues, to follow the court's orders.

¶ 13    Defendant filed a notice of appeal. On December 13, 2023, the Office of the State Appellate Defender (OSAD) filed a memorandum in support of defendant's appeal. The State, on January 2, 2024, filed a memorandum in opposition to the appeal.

¶ 14                                 II. ANALYSIS

¶ 15    In his notice of appeal, defendant argued that (1) the State did not meet its burden of showing, by a preponderance of the evidence,[2] that the proof is evident or the presumption great that he committed the charged offense, in that the police synopsis was insufficient to establish such, failed to indicate that any person identified defendant in the video, and the State did not show the video; (2) the State did not meet its burden to establish dangerousness, where it did not show that defendant committed the alleged offense, which was an inefficient way to attempt to meet its burden to show he posed any threat; (3) the State failed to meet its burden to show that no condition or combination thereof can mitigate the threat to the safety of any person or the community or

---

[2]Clear and convincing evidence is "more than a preponderance of the evidence and not quite approaching the beyond-a-reasonable-doubt standard necessary to convict a person of a criminal offense." *People v. Craig*, 403 Ill. App. 3d 762, 768 (2010).

defendant's willful flight, where there was no evidence of willful flight and electronic home monitoring (EHM), GPS, or stay away orders are less restrictive options that could mitigate any threat but were not utilized; (4) the trial court erred in finding that no condition or combination thereof could reasonably ensure defendant's appearance for later hearings or prevent him from being charged with a subsequent felony or class A misdemeanor, where there was no evidence of willful flight, and EHM, GPS, or stay away orders are less restrictive options that could mitigate any threat but were not utilized; and (5) defendant was denied a fair hearing, where he was removed from the courtroom and, thus, denied due process.

¶ 16    In its memorandum, OSAD addresses only defendant's third argument. OSAD's memorandum, thus, controls to identify the issues or claims on appeal, and we will not address the arguments raised in the notice of appeal that OSAD does not address in its memorandum. *People v. Fortenberry*, 2024 IL App (5th) 231002, ¶¶ 41-42.

¶ 17    Defendant argues in OSAD's memorandum that the trial court abused its discretion in finding that there were no conditions of release that would mitigate defendant's dangerousness. He maintains that, other than his conduct during the alleged offense and during the detention hearing and his previous criminal history of robbery in 2019, there was nothing in the pretrial risk assessment (which was not admitted at the hearing) or his history that indicated he had a violent character. Defendant asserts that the State never explained the circumstances of the offense, it was unclear why defendant attacked Ramirez in the first place or whether they were acquainted with one another, and no one discussed defendant's living conditions or whether he was employed or in school. Despite this lack of information, his possible mental health condition, and no explicit consideration of any particular condition for release, defendant argues, the court found pretrial incarceration to be the least restrictive means to prevent him from engaging in violent behavior.

This determination, defendant contends, was against the manifest weight of the evidence and this court should reverse and remand for a conditions-of-release hearing. 725 ILCS 5/110-5 (West 2022).

¶ 18    The State's proffer, defendant further argues, did not constitute clear and convincing evidence that there were no conditions of release that could mitigate the risk he posed toward Ramirez and the community. First, he notes that, neither in its petition nor at the hearing did the State present evidence or argue that no condition or combination thereof could mitigate defendant's dangerousness. Second, defendant asserts that the trial court, in explaining that less restrictive conditions could not assure the community's or Ramirez's safety, found that, in addition to the facts of the case, defendant appeared to suffer from mental health issues that rendered him unable to willingly follow court orders. Defendant argues that suffering from a mental health condition should not be the sole reason that pretrial conditions of release cannot be imposed, particularly where there was no expert who could report that defendant was incapable of following the court's instructions due to his mental illness. Defendant suggests that conditions such as a no-contact order could protect the victim and that in-person check-ins and a mental health evaluation and possibly treatment could protect the community from further violence. He further notes that people with mental health disorders tend to deteriorate once involved with the criminal justice system, because they lack effective integrated treatment and supervision. Pointing to the statute, he argues that, for example, it mandates mental health evaluations and possibly treatment as a condition of release for those charged with carrying a concealed weapon in certain areas such as a school. 725 ILCS 5/110-10(a)(6) (West 2022). Here, defendant contends, the trial court recognized that defendant's behavior and his charges could stem from a mental health condition, but instead of considering the available tools in the statute, the court chose to simply detain him

and allow the ill-equipped jail system to keep defendant from threatening the community's safety. The statute's recognition that an assessment of the appropriate conditions of release must be individualized, defendant asserts, signifies that detention cannot be the only option for the mentally ill. 725 ILCS 5/110-6.1(f)(7) (West 2022).

¶ 19    The State responds that, due to defendant's unpredictability and violence, no conditions could mitigate the real and present threat of danger. Finally, the State points out that the court noted that, at some point in the future, it could revisit the issue if defendant addressed his potential mental health situation.

¶ 20                    A. Pretrial Release Provision of Code

¶ 21    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as amended by the Act. 725 ILCS 5/art. 110 (West 2022). Under the Code, pretrial release may be denied only in certain situations (qualifying offenses). *Id.* §§ 110-2(a), 110-6.1. Upon filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that: the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f).

¶ 22    If the trial court finds that the State proved a valid threat to the safety of any person or the community, the defendant is likely to flee to avoid prosecution, or the defendant failed to abide by previously issued conditions of pretrial release, the trial court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the

safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a).

¶ 23    If the trial court determines that the defendant should be denied pretrial release, the court must make written findings summarizing the reasons for denying pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(h)(1).

¶ 24    Our standard of review is twofold. We review under the manifest-weight-of-the-evidence standard the trial court's factual findings regarding whether the State presented clear and convincing evidence that mandatory conditions of release would fail to protect any person or the community, the defendant has a high likelihood of willful flight to avoid prosecution, or the defendant failed to comply with previously issued conditions of pretrial release thereby requiring a modification or revocation of the previously issued conditions of pretrial release. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is against the manifest weight of the evidence only where the finding is unreasonable. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs only when the trial court's decision is unreasonable. *People v. Williams*, 2022 IL App (2d) 200455, ¶ 52.

¶ 25                    B. Feasibility of Less Restrictive Conditions

¶ 26    Where the trial court finds that the State proved a valid threat to the safety of any person or the community, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial

release." *Id.* § 110-5(a)(1)-(5). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant (including his mental condition); (4) the nature and seriousness of the specific, real, and present threat to the safety of any person or the community that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release. *Id.*

¶ 27 Defendant argues that the trial court erred in finding that there were no less restrictive conditions of release that would mitigate defendant's dangerousness. Specifically, he contends that he does not have a violent character, it was unclear why he attacked Ramirez or whether they were acquainted with one another, and no one discussed his living conditions or whether he was employed or in school. Despite this lack of information, defendant continues, his possible mental health condition, and no explicit consideration of any particular condition of release, the trial court found that no less restrictive option could mitigate any threat he posed.

¶ 28 We reject defendant's arguments. His criminal history includes a conviction for disorderly conduct and a 2019 Texas felony robbery with intent of bodily harm. In the present case, he allegedly struck Ramirez in the head three times, twice with his hand and once with a brick. He also threatened to kill Ramirez and other Hispanics. Given the severity of his conduct and his threats, the trial court reasonably determined that less restrictive options could not mitigate the threat defendant poses to Ramirez and the community.

¶ 29 Defendant complains that the State did not argue in either its petition or at the hearing that no condition could mitigate any threat he poses. This is unavailing, because the State took the overall position that defendant should be detained and relied on the police synopsis and

defendant's history to support its position. To the extent that defendant argues that the State should have separately or more explicitly addressed less restrictive conditions, we find it unavailing; an overarching argument that defendant should be detained is sufficient.

¶ 30     We also reject defendant's argument that his alleged mental health condition cannot be the sole reason pretrial release is denied or that it cannot be done so without expert testimony. The trial court did not rely solely on defendant's mental health condition in rejecting less restrictive conditions. Specifically, in its written order, the court found that, based on defendant's inability or unwillingness to follow court orders, *possibly* due to mental health issues, less restrictive conditions would not assure the safety of the community or assure his appearance in court. Section 110-5(a)(3)(A) of the Code requires the trial court to consider a defendant's mental condition in determining any conditions of release. 725 ILCS 5/110-5(a)(3)(A) (West 2022). The court did so here. The statute does not require a court to impose less restrictive conditions in cases where the defendant has mental health issues. The court also noted that, in the future, if defendant addressed his possible mental health situation, it could revisit the issue of less restrictive conditions. The record shows that, after he was arrested, defendant underwent a mental health evaluation, but any results confirming he suffered from any such health issue were not available for, or presented at, the hearing on the State's petition. Finally, in its oral findings, it also referenced defendant's outbursts in court. In sum, we cannot conclude that the court failed to make an individualized assessment of defendant's options or that it otherwise erred in finding that no less restrictive conditions could ensure the safety of Ramirez or the community.

¶ 31                          III. CONCLUSION

¶ 32     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 33     Affirmed.