2024 IL App (2d) 230438-U
No. 2-23-0438
Order filed January 22, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-2027 |
| RODOLFO MADRIGAL, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Trial court's detention order is affirmed.

¶ 2   In this interlocutory appeal under Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023), defendant, Rodolfo Madrigal, timely appeals the order of the circuit court of Kane County granting the State's petition to detain him pursuant to Public Acts 101-562 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1]  We affirm.

_____

[1]The Act has also been referred to as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act.  Neither name is official, as neither appears in the Illinois Compiled Statutes or

¶ 3                                    I. BACKGROUND

¶ 4     On September 26, 2023, defendant was indicted for two counts of first degree murder (720 ILCS 5/9-1(a)(1) (West 2022)), and one count of attempt first degree murder (720 ILCS 5/8-4(a) (West 2022)).  On October 20, 2023, the State filed a verified petition to detain defendant pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as amended by the Act.

¶ 5     On October 20, 2023, the trial court held a hearing on the State's petition.  The State relied on the grand jury transcript that it had attached to its petition.

¶ 6     That transcript, dated September 26, 2023, reflects testimony from Montgomery police detective Anthony Hull that, on January 12, 2021, around 11:30 a.m., Andrew Contreras was driving a Lincoln Aviator with his friend, Brandon Dlugopolski, in the front passenger seat, and his six-year-old son in the rear passenger seat.  According to Hull, in his police statement, Dlugopolski explained that, just before the Lincoln pulled onto a ramp for the Route 30 bridge, a Nissan SUV tried to get into their lane, but there was not enough room.  The Nissan ultimately pulled behind the Lincoln and, as they pulled up onto the eastbound side of the Route 30 bridge, Dlugopolski made eye contact with the driver of the Nissan, described as a Hispanic male, who looked angry.  Dlugopolski heard gunshots.  Ultimately, four bullets struck the Lincoln, killing Contreras.  A witness from another vehicle, who was behind both vehicles when the shooting occurred, told Hull that the passenger sitting in the Nissan's front passenger seat stuck a silver, revolver-style firearm outside of the window and fired three to five shots before the vehicle sped away.  No shell casings were recovered at the scene.  Dlugopolski and other witnesses provided a partial license plate number for the Nissan. Those numbers, along with a description of the vehicle,

_____

public acts.

were provided to officers in the Aurora police department, who identified it as possibly matching a vehicle belonging to Stacy Alonis, defendant's girlfriend. Police recovered video from the Nissan's path of travel and, based upon still photographs from the video, believed defendant was the Nissan's front seat passenger.

¶ 7 A search of defendant's driver's license file showed an address for him in Streator; the Streator police department went to that address and found a Nissan there, but the license plates affixed to the back of it did not register to the Nissan. However, the license plates that had been identified at the scene were affixed to a different vehicle in the driveway. Hull testified that they were able to confirm the license plates on the other vehicle belonged to the Nissan. On January 15, 2021, a search warrant was obtained. Fingerprints on the license plates matched defendant's prints. Further, a receipt was found in the Nissan from Walmart in Montgomery around 9 a.m. on the day of the shooting; video from the Walmart reflected the Nissan arriving there around 8:30 a.m., a male and female exited the vehicle and made purchases inside, then left Walmart around 9:06 a.m. Additionally, video also showed defendant and the Nissan leaving a "One Stop" around 11:26 a.m. that day, and surveillance videos from other locations reflected the Nissan's path of travel until 11:30 a.m., when it passed 111 South Lake Street, near the location of the shooting. Police received the "shots fired" call at 11:31 a.m. Hull agreed that, on April 19, 2022, Alonis testified before the grand jury and, in her testimony: admitted that she owned the Nissan; identified a photo of the rear of that car with the license plate matching descriptions of the partial numbers given by witnesses; identified defendant in the photo shown to her from recovered videos; and testified that she was with defendant that day at Walmart. Further, on February 17, 2021, defendant and Alonis were stopped for a traffic violation and, during that stop, a revolver was located in the glove box in front of defendant, who was in the front passenger seat.

¶ 8    In addition to the petition with the attached grand jury transcript, the State argued that it wished to rely upon the fact that, based on police reports, defendant was a known gang member. Further, the State noted defendant's extensive criminal history, including: a 2022 aggravated battery (great bodily harm) (for shooting his brother and for which he was on probation at the time of these charges); a 2021 conviction for unlawful possession of a controlled substance; a 2005 conviction for home invasion (served 10 years); a 2002 conviction for aggravated battery (served 4 years); and 1998 convictions for armed violence and stolen motor vehicle.

¶ 9    Defendant, through counsel, argued that the information in the grand jury transcript did not satisfy the State's burden of clear and convincing evidence because all that was required before the grand jury was enough proof to establish probable cause. Further, defendant noted that, based on the grand jury transcript: no identification was made of the shooter; defendant was not the owner of the tracked vehicle; Alonis identified defendant in the Walmart video but, as that was at 9 a.m., the proof of this crime (at 11:30 a.m.) was not evident; and there was no evidence that defendant posed any danger or threat to a particular individual or the community or that less-restrictive conditions could not mitigate any such threat. As to willful flight, defendant argued that there was no evidence that he ever missed a court date or there were any charges involving escape in his background. Defendant noted that, although the State indicated that defendant is a gang member and that this case was gang motivated, there was no evidence presented to support any gang-related allegations. Further, defendant argued that electronic home monitoring (EHM), no contact orders, an order that defendant may not possess a weapon, and maximum pretrial supervision with regular drug drops would constitute less-restrictive conditions that would sufficiently mitigate any perceived threat. Defendant also noted that, because he was on probation, he would, if released on EHM, be "doubly monitored" by a probation officer. Finally, defendant

explained that he was 43 years old, had lived at the same address in North Aurora since 2020, and has worked at a body shop since 2020, such that he was not a risk for willful flight.

¶ 10    The trial court granted the State's petition to detain.  It found that the State had established by clear and convincing evidence that the proof was evident and the presumption great that defendant committed the charged offenses, which were eligible for detention.  It further found that the State established by clear and convincing evidence that defendant posed a real and present threat to the safety of any person or the community, as well as that defendant has a high likelihood of willful flight to avoid prosecution and that no conditions or combination of conditions would mitigate the real and present threat posed by defendant to any person or the community, nor mitigate the risk of willful flight.

¶ 11    In announcing its findings, the court summarized the evidence presented in the grand jury transcript to find the proof evident and presumption great that defendant committed the charged offenses.  The court found defendant posed a real and present threat to the community based upon: his history of violence, which included a prior shooting; he was on probation at the time of this offense; and he apparently did not have any connection to the deceased or the other vehicle passengers, making this appear to be a crime lacking motive or stemming from only a traffic incident, which is "even more dangerous to the community than what we've gone through so far." Moreover, the court found defendant possessed a high likelihood of willful flight to avoid prosecution because he faced a "very serious" offense with, given his background, a "large" penalty if convicted.

¶ 12    On October 25, 2023, defendant filed his notice of appeal using the form notice promulgated under Illinois Supreme Court Rule 606(d) (eff. Oct. 19, 2023).  On December 14, 2023, we notified defendant that his memorandum was overdue and gave him a deadline of December 21, 2023, by which to submit a memorandum, or we would deem that he was standing

on his notice of appeal. On December 19, 2023, defendant submitted a declination letter, notifying the court that he would not be submitting a Rule 604(h) memorandum. On January 9, 2024, the State submitted its memorandum opposing defendant's appeal.

¶ 13                                    II. ANALYSIS

¶ 14    Preliminarily, we briefly address the State's arguments that we should dismiss the appeal because defendant did not, as required by Rule 604(h), describe in his notice of appeal the relief requested. We decline to dismiss the appeal on this basis, as the defect is not jurisdictional. See, *e.g.*, *People v. Presley*, 2023 IL App (5th) 230970, ¶¶ 24-26; *People v. Wetzel-Connor*, 2023 IL App (2d) 230348-U, ¶ 18. In addition, we reject the State's argument that, because defendant did not ensure that the grand jury transcript was included in the record on appeal, we must resolve against him any doubts arising from the incompleteness of the record. In fact, the grand jury transcript, adequate to address defendant's contentions, is contained in the record as an exhibit (see E2-E20).

¶ 15    Pretrial release is governed by article 110 of the Code, as amended by the Act. 725 ILCS 5/110 (West 2022). Under the Code, pretrial release may be denied only in certain situations. *Id*. §§ 110-2(a), 110-6.1. Upon filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id*. § 110-6.1(e), (f). If the trial court finds that the State proved a valid threat to the safety of any person or the community and/or defendant's likely willful flight to avoid prosecution, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance

of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id*. § 110-5(a). If the trial court determines that the defendant should be detained, the court must make written findings summarizing the reasons for detention, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution. *Id*. § 110-6.1(h)(1).

¶ 16    We review defendant's arguments under a bifurcated standard of review: the court's factual determinations are reviewed to determine whether they are against the manifest weight of the evidence, and the court's ultimate determination regarding denial of pretrial release is reviewed for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 17    In his notice of appeal, defendant first argues that the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident and the presumption great that defendant committed the charged offenses, because: (1) the State presented only the grand jury transcript, no live witnesses were called to testify, nor was any live or photo lineup performed to identify the shooter; and (2) defendant was not the owner of the suspect vehicle. We disagree. Although the Act requires proof by clear and convincing evidence, it also plainly states that the State "may present evidence at the hearing by way of proffer based on reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2022); see also *People v. Robinson*, 2023 IL App (2d) 230345-U (providing that the State was not required to present any testimony to support its petition). Defendant's contention that live testimony is required to meet the State's burden is, therefore, inconsistent with the language of the Act. Moreover, the fact that the evidence did not demonstrate that defendant was the owner of the suspect vehicle is irrelevant here, as vehicle ownership is not an element of the charged offenses, nor does it render the proof less evident that defendant

committed the charged offenses, as the shots were allegedly fired from a car belonging to defendant's girlfriend. In sum, the court's finding that the proof was evident and the presumption great that defendant committed the charged offenses was not contrary to the manifest weight of the evidence.

¶ 18 Next, defendant's notice of appeal contends that the State failed to meet its burden of proving by clear and convincing evidence that he poses a real and present threat to the safety of any person or the community, based on the specific, articulable facts of the case, because the State's proffer from the grand jury transcript was insufficient to meet its burden. For the reasons mentioned above, we again disagree. No live testimony was required, as the State may make a proffer based on reliable information, and a transcript of sworn testimony from the grand jury hearing is sufficient. Further, the court's dangerousness finding was not contrary to the manifest weight of the evidence, where, in addition to the grand jury testimony, the court considered the State's proffer regarding defendant's criminal history, including that he was on probation for a shooting at the time of this offense and, further, that the charged offenses were apparently without motive or connection to the victims. In addition, we granted defendant's motion to supplement the record with the public safety assessment report, which reflects that defendant has three prior violent convictions.

¶ 19 Defendant also argues in his notice of appeal that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the threat to the community or his willful flight. Specifically, he notes that other pretrial conditions would mitigate any threat, such as EHM, no contact with the complaining witnesses, and no possession of any weapons. Further, he notes there was no evidence that he missed any prior court dates. We disagree. Preliminarily, although the court found both that no conditions could mitigate against the threat to the community and a risk of willful flight, we need only address

one of these findings, as clear and convincing evidence of either is sufficient to detain. Here, the court did not abuse its discretion in finding that no condition or combination of conditions could mitigate the threat to the community, where defendant allegedly, with no connection to the victims and no apparent motive other than a traffic incident, fired multiple gunshots into a vehicle containing three people (including one child) and killing the driver. In addition, at the time of these offenses, defendant was on probation for a 2022 aggravated battery (great bodily harm) for another shooting.

¶ 20    Defendant's notice of appeal last contends that he was denied an opportunity for a fair detention hearing, because the State called no live witnesses. Again, as discussed above, the Act does not require the State to call live witnesses in order to satisfy its burden to detain.

¶ 21                                 III. CONCLUSION

¶ 22    For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

¶ 23    Affirmed.