**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230640-U

Order filed January 30, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0640 Circuit No. 22-CF-2452 |
| JAKOBI A. KINSEY, | ) ) ) | Honorable Margaret M. O'Connell, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Presiding Justice McDade specially concurred.
Justice Hettel dissented.

_____

**ORDER**

¶ 1     *Held*:   The circuit court's decision to detain defendant was an abuse of discretion.

¶ 2     In November 2022 defendant, Jakobi A. Kinsey, was indicted for aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2022)) and three counts of aggravated discharge of a firearm (*id.* § 24-1.2(a)(2), (b)). His bond was set at $1 million, and he remained in custody. On September 25, 2023, defendant filed a motion seeking pretrial release. In response, the State filed a verified petition to deny pretrial release, alleging defendant was charged with a forcible felony, and his

release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(1.5) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a)(1.5) (West 2022)). After a hearing, the circuit court granted the State's petition to deny pretrial release. We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4        The factual basis provided at the detention hearing established that the officers were dispatched to Yorktown Mall around 3 p.m. for the report of shots fired. Witnesses indicated that two individuals, one with a ski mask covering his face and the other with dreadlocks, were seen running towards their vehicle. They got into their vehicle and chased after a Ford Escape. The individual with the ski mask was on the passenger side and was seen leaning out the window, firing several shots towards the Escape. Officers recovered five spent shell casings in the area of the shooting.

¶ 5        Officers later received information from Good Samaritan Hospital of a patient with a gunshot wound. Upon arrival at the hospital, officers found the Escape and made contact with the occupants. There had been three occupants in the Escape at the time of the shooting, one of which was being treated. The other two victims stated that they were in Yorktown Mall when they had a confrontation with two unknown men, one wearing a ski mask and one with dreadlocks. They stated the one with the ski mask told the one with the dreadlocks to pass me that, which the victims interpreted to mean to pass him a gun. The victims left the mall and drove away in the Escape. As they were driving away, they saw the individuals from the mall outside and saw the two men start running to their vehicle. They then saw the one with the ski mask lean out of the window and shoot several shots towards them, hitting the female victim in the arm.

¶ 6    Surveillance video from the mall showed the confrontation in the mall as well as the car chase. The video showed the man with dreadlocks as the first who began to run towards the vehicle to chase after the victims. The man with dreadlocks driving the vehicle was identified as defendant. Defendant admitted that he and his co-defendant had a confrontation with the victims in the mall, chased after the victims in the car, and that the co-defendant fired several shots toward the victims. Defendant had previously received second chance probation in 2019 for forgery, which was successfully terminated.

¶ 7    A hearing was held on the petition on November 6, 2023. The State provided the factual basis and noted that the offense happened "in the middle of the day," "at a very busy mall." The State noted that defendant "is the first one they see sprinting towards his car" and that after the incident, defendant and his co-defendant just returned to the mall "almost as if nothing happened." The State also indicated that when defendant chased the Escape in his vehicle, he almost hit the victim's vehicle.

¶ 8    Defense counsel admitted into evidence four letters speaking to defendant's character and various certificates defendant had earned in the jail, amassing approximately 530 hours. Defense counsel called Stephanie Williams to testify, who was a forensic mental health therapist with the Du Page County Health Department. She was the primary clinician in the recovery pod at the jail. Defendant was accepted into the recovery pod and participated in all programming. She was unaware of defendant having any disciplinary problems in the jail. Defendant expressed to her that he would like to continue working with a sponsor even if he was released.

¶ 9    Defendant's counsel argued that defendant would not pose a danger to anyone if released, noting that he did not have a history of violence and was not the shooter. Counsel stated that defendant followed the Escape after the verbal altercation to get the license plate number and

3

said he did not know his co-defendant was going to fire shots. Counsel further argued that defendant expressed remorse and that defendant would follow any conditions, as evidenced by his participation in the recovery pod.

¶ 10　　　　The court granted the State's petition finding the State met its burden by clear and convincing evidence. In doing so, it stated,

> "So I do believe that the presumption is great that [defendant] committed a qualifying offense. Does he pose a real and present threat to the safety of specific, identifiable persons or the community at large? While [I] respect the hard work that he's done while he's been incarcerated, this is an event where, quite honestly, if they had just driven the other way, we wouldn't be in this situation. His inability to at that point control his desire to have *** some sort of confrontation with the victims in this case shows to me that he is a threat to the safety of the community at large."

The court further stated that no conditions would "prevent a situation like this from happening again."

¶ 11　　　　　　　　　　　　　　　II. ANALYSIS

¶ 12　　　　On appeal, defendant contends that the court abused its discretion in granting the petition to detain. Specifically, he contends that there were conditions that would mitigate any dangerousness he posed. We consider factual findings for the manifest weight of the evidence, but the ultimate decision to grant or deny the State's petition to detain is considered under an abuse of discretion standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Under either standard, we consider whether the court's determination is arbitrary or unreasonable. *Id.*; see also *People v. Horne*, 2023 IL App (2d) 230382, ¶ 19.

¶ 13    Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that defendant committed a detainable offense, (2) defendant poses a "real and present" threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(e). When determining a defendant's dangerousness and the conditions of release, the statute includes a nonexhaustive list of factors the court can consider. *Id.* §§ 110-6.1(g), 110-5.

¶ 14    We find the court abused its discretion in granting the petition. Defendant was not the shooter in this case and did not have a violent criminal history. The court found defendant was a real and present threat based on one incident that occurred nearly a year prior to the hearing, and neither the State nor the court could point to anything else in the record that would indicate defendant was a "present" threat to the community as required by the statute. *Id.* § 110-6.1(e)(2). In fact, the record indicates the opposite. All the evidence in the record indicated his willingness and ability to follow any conditions the court placed on him. He had successfully completed probation previously and was working toward bettering himself in the jail by completing several programs while in custody. The court's decision that no conditions were available that would mitigate defendant's dangerousness was against the manifest weight of the evidence, and the court, thus, erred in granting the State's petition. We therefore remand the matter for the court to release defendant and determine which conditions are necessary for his release.

¶ 15                                    III. CONCLUSION

¶ 16    The judgment of the circuit court of Du Page County is reversed and remanded.

¶ 17    Reversed and remanded.

¶ 18    PRESIDING JUSTICE McDADE, specially concurring:

¶ 19    I agree with the majority's decision to reverse the trial court's order for abuse of discretion. However, I specially concur under the belief that the decision could have been based on simpler grounds.

¶ 20    Section 110-6.1(e) of the Code of Criminal Procedure of 1963 states that "[a]ll defendants shall be presumed eligible for pretrial release. . . ." 725 ILCS 5/110-6.1(e) (West 2022). As the majority explains, to rebut this presumption, the State must prove not just one or two, but the following *three* elements, by clear and convincing evidence: (1) that the proof is evident or the presumption great that the defendant has committed a detainable offense; (2) that the defendant poses a real and present threat to the safety of any person, persons, or the community, or is a flight risk; and (3) that no conditions can mitigate this threat or risk of flight. *Id.*

¶ 21    The dissent acknowledges that the State in no way argued the third element of ineligibility, regarding whether any conditions of release can mitigate the threat posed by defendant. This alone demonstrates that the State failed to meet its burden to rebut the presumption of eligibility, and that the trial court abused its discretion by finding otherwise. This alone also warrants reversal of the trial court's order.

¶ 22    Of further note, the State's failure to make a showing toward the third element of ineligibility also deprives us of the ability to review whether the trial court's factual findings under this element were against the manifest weight of the evidence, since there was, in fact, no evidence presented. This, in turn, further deprives us of the ability to review whether the trial

6

court abused its discretion by denying defendant pretrial release, again because there was no evidence presented on the third element.

¶ 23    For the foregoing reasons, I would reverse the trial court's order on the above grounds, without reaching those discussed by the majority.

¶ 24    JUSTICE HETTEL, dissenting.

¶ 25    I would find the trial court did not abuse its discretion in granting the petition.

¶ 26    In this case, defendant's participation in services and good behavior while in custody are certainly admirable. However, the nature and circumstances of the offense support the trial court's finding that defendant still poses a threat if he is released. See *id.* § 110-5(a)(1) (the nature and circumstances of the charged offense is a relevant factor to consider in the trial court's assessment of what, if any, conditions of release will mitigate the threat the defendant poses to any other person or the community). The evidence indicated that defendant had an altercation with individuals he did not know at a mall in middle of the day. Shortly thereafter, the unknown victims left the mall in another vehicle. Defendant then ran to his car, jumped in the driver's seat, and proceeded to chase them. As defendant pursued them, his co-defendant leaned out the passenger window and fired several shots at their vehicle, injuring one of the victims.

¶ 27    The factual basis further provided that the victims heard the co-defendant tell defendant to "pass him that" which meant pass him a gun, indicating defendant possessed the gun at some point. While defense counsel may have argued that defendant did not know that his co-defendant was going to shoot the gun at the other vehicle, the evidence suggests otherwise as during his police interview, the co-defendant told officers that defendant urged him not to shoot his gun. In addition to the circumstances of the offense, defendant's county jail therapist testified that she was not aware of any plans defendant had made to follow-up with services if he is released.

7

Thus, while defendant presented evidence of his commendable efforts of self-improvement in jail, the court's concern as to his dangerousness was not against the manifest weight of the evidence. The trial court's decision, therefore, was not an abuse of discretion.

¶ 28    In reaching my conclusion, I recognize the State did not discuss any conditions of release, nor did it argue that "no condition or combination of conditions *** can mitigate" the threat posed by defendant. *Id.* § 110-6.1(e)(3). Although section 110-6.1(e) requires the State to show clear and convincing evidence of all three elements of ineligibility, the statute does not require the State to specifically set forth the reasons why conditions would not mitigate any threat at the detention hearing. See *People v. Madrigal*, 2024 IL App (2d) 230438-U, ¶ 19; *People v. Perez*, 2024 IL App (2d) 230416-U, ¶ 29 (rejecting defendant's argument that because the State did not argue the third element at the detention hearing, it failed to meet its burden of proving by clear and convincing evidence that no conditions can mitigate the threat). The statute directs only that the court enter an order of detention "summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or person or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(h)(1) (West 2022). The trial court complied with that directive. I would therefore affirm the court's order granting the State's petition to deny pretrial release.